IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


EUGENE HOWARD RAINEY,                :
                                     :
            Petitioner               :
                                     :
      v.                             :     CIVIL NO. 4:CV-13-1806
                                     :
SCI-COAL TWP. SUPT.,                 :     (Judge Brann)
                                     :
            Respondent               :


## MEMORANDUM

June 17, 2016

## Background

Eugene Howard Rainey, an inmate presently confined at the State

Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.), filed this

pro se habeas corpus petition pursuant to 28 U.S.C. § 2254.  By Memorandum and

Order dated August 26, 2013, this Court granted Petitioner's motion for stay and

administratively closed his case pending conclusion of Rainey's state court

proceedings.  See  Doc. 8.  Petitioner's motion requesting that his action remain

stayed was granted by Order dated April 29, 2014.  See  Doc. 13.  This matter was

reopened on July 22, 2015 after Petitioner notified the Court that his state court

proceedings had terminated.

1

Rainey was convicted of third degree murder and criminal conspiracy to commit aggravated assault with a deadly weapon on March 18, 2009 following a jury retrial in the Court of Common Pleas of York County, Pennsylvania.[1]  The Petitioner was tried along with a co-defendant, his brother, George Rainey.[2]  It is noted that he was acquitted of first degree murder and conspiracy to commit murder in the first degree.  Petitioner was sentenced on April 13, 2009 to an aggregate twenty-five (25) to fifty (50) year term of  imprisonment.

Following a direct appeal to the Superior Court of Pennsylvania, Petitioner's conviction and sentence were affirmed on October 19, 2010 .  See Commonwealth v. Rainey, 15 A.3d 533 (Pa. Super. 2010)(Table).  A petition for allowance of appeal was not filed with the Supreme Court of Pennsylvania.

On or about March 18, 2011, Rainey filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act (PCRA).[3]  After appointment of

---

[1]   An initial jury trial resulted in a mistrial.

[2]   Co-defendant George Rainey was awarded a new trial due to a conflict of interest involving his attorney and a prosecution witness.  See Commonwealth v. Rainey, 81 A.3d 986 (Pa. Super. 2013)

[3]   See 42 Pa. Cons. Stat. Ann. § 9541 et seq.  The PCRA "permits motions for post-conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions." Hankins v. Fulcomer, 941 F.2d 246, 251 (3d Cir. 1991).

counsel and a May 6, 2011 evidentiary hearing, the trial court denied relief.  The

Superior Court affirmed the denial of PCRA relief by decision dated April 9,

2012.[4]  See Commonwealth v. Rainey, 48 A.3d 471 (Pa. Super  2012) (Table).

On November 2, 2012, Petitioner filed a second PCRA action which sought

relief on the basis of after discovered evidence.  The new evidence consisted of

statements by three alleged eyewitnesses to the shooting who were willing to

testify that Petitioner was not the shooter.  Following appointment of counsel, a

hearing was convened on February 28, 2013 and after a continuance was granted

due to the unavailability of a witness, the hearing concluded on April 17, 2013.

Following the hearing, Rainey's second PCRA action was denied.[5]  An appeal of

that determination was denied by the Superior Court on December 24, 2013 (after

the July, 2013 filing of this action).  See Commonwealth v. Rainey, 93 A.3d 519

(Pa. Super.  2013)(Table).

On November 15, 2014, Rainey filed a third PCRA action asserting

ineffective assistance of second PCRA counsel.  A hearing was conducted on May

1, 2014 and thereafter relief was denied.  The Superior Court affirmed the denial

---

[4]    However, the Superior Court granted Petitioner permission to raise his claim of newly discovered evidence via a second PCRA petition

[5]  Specifically, the PCRA court found that none of the testimony by the three eyewitnesses was credible.

3

of PCRA relief. <u>See</u> <u>Commonwealth v. Rainey</u>, 2014 WL 10795258 (Pa. Super. Oct. 22, 2014).

By way of background and as summarized by the Superior Court, Petitioner and his brother, George, were arrested and charged with the murder of Dion Williams.  Specifically, it was alleged that Petitioner, his brother, and a third individual, Joseph Mallory, were driving and smoking marijuana together in a vehicle on the morning of January 9, 2008.  George Rainey, who was driving the car, spotted a car driven by Letika Engram with a front seat passenger, Dion Williams.[6]  The Rainey car proceeded to follow the Engram vehicle.  When the Engram car paused at a stop sign, Petitioner left his car and ran towards the other vehicle.  However, Engram sped off before he arrived.

After a high speed chase, the Engram car was eventually blocked in an alley by the Raineys' vehicle, at which point it is asserted that Petitioner again exited his vehicle, ran to the passenger side of the Engram vehicle, removed a handgun from his pocket, and fired three gunshots into the front passenger side fatally wounding Williams.   As they fled the scene, George Rainey purportedly asked the Petitioner if he had shot Williams.  The Rainey brothers eventually left

---

[6] Petitioner was in the front passenger seat while Mallory occupied the rear passenger side seat.

Pennsylvania together and were subsequently apprehended in the State of Maryland while registered in a hotel under fictitious names.

Petitioner presently seeks habeas corpus relief on the following grounds: (1) there was insufficient evidence to support his conviction on criminal conspiracy to commit aggravated assault with a weapon; (2) he is factually and legally innocent of all charges; (3) the trial court erred in failing to grant a continuance and by allowing trial testimony by a new witness; (4) ineffective assistance of trial counsel; and (5) newly discovered evidence pertaining to witness recantation, prosecutorial misconduct, and exculpatory identification evidence.  Rainey indicates that Claims (1) , (3) , & (4) were raised on his direct appeal..  He adds that Claims (2) &(5) were included in his second PCRA action

**Discussion**

**Standard of Review**

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Specifically, when a federal-law issue has been adjudicated on the merits by

a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).[7]  See generally, Knowles v. Mirzayance, 556 U.S. 111, 114 (2009); Gattis v. Snyder, 278 F.3d 222, 234 (3d Cir. 2002); Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).  The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning.  Williams v. Taylor, 529 U.S. 362, 404-405 (2000).  As explained in Bell, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus

---

[7]  Specifically, 28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . .

> of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . .

Furthermore, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  28 U.S.C. § 2254(e) (1).

In summary, the appropriate inquiry for federal district courts in reviewing the merits of Section 2254 petitions is whether the state court decisions applied a rule different from the governing law set forth in United States Supreme Court cases, decided the case before them differently than the Supreme Court has done on a set of materially indistinguishable facts, or unreasonably applied Supreme Court governing principles to the facts of the particular case.  See Keller v. Larkins, 251 F.3d 408, 417-18 (3d Cir. 2001) (a district court entertaining a § 2254 action must first address whether the state court decision was contrary to Supreme Court precedent); Martini v. Hendricks, 188 F. Supp.2d 505, 510 (D. N.J. 2002) (a § 2254 applicant must show that the state court decision was based on an unreasonable determination of facts in light of evidence presented in the state court proceeding).  Findings of fact by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  28 U.S.C. § 2254(e)(1).

**Insufficient Evidence**

Grounds One and Two similarly contend that there was insufficient evidence to support Rainey's conviction for criminal conspiracy to commit aggravated assault.  <u>See</u> Doc. 1, ¶ 12.  Petitioner adds that the Commonwealth failed to prove all elements of both of his underlying crimes.  The gist of his argument appears to be that his convictions are inconsistent because the conspiracy charge includes the element of specific intent while the homicide conviction does not.  <u>See</u> Doc. 16, p. 17.  The Commonwealth counters that there is no basis for federal habeas corpus relief because it "produced ample evidence showing that defendant not only killed the victim by shooting him, but also conspired with his brother to do so."  Doc. 29, pp. 9-10.

When addressing the issue of sufficiency of the evidence the standard of review used by a federal court is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, <u>reh'g denied</u>, 444 U.S. 390 (1979).  The Superior Court in reviewing Petitioner's insufficient evidence claim applied Pennsylvania's standard which is consistent with <u>Jackson</u>.  As such, the state court has not applied a standard contrary to clearly established federal law.

Petitioner was acquitted of first degree murder but was convicted of third degree murder.  Under Pennsylvania state law, third degree murder is defined as when a person commits a killing which is malicious but neither intentional nor committed during the commission of a felony.   Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body.

It is initially noted that the Commonwealth produced eyewitness testimony by two persons  at trial which established that the Petitioner shot and killed the victim.  Malice could clearly be inferred from Eugene Rainey's use of a firearm and the chasing down of the victim's vehicle.  This evidence was clearly sufficient under Jackson to support a third degree murder conviction.

The Petitioner was also convicted of conspiracy to commit aggravated assault with a deadly weapon.   Respondent asserts that the jury logically inferred that co-defendant George Rainey's statements immediately after the shooting established that the brothers had a common objective to shoot the victim.  See Doc. 13, p. 14.

Pursuant to Pennsylvania state law, in order to establish the offense of criminal conspiracy, the Commonwealth must establish that the defendant entered into an agreement with another person or persons with the intent to engage in conduct which constitutes a crime or in an attempt or solicitation to commit such

crime or agrees to aid such person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.  It also must be shown that there was a shared criminal intent.  Finally, an overt act in pursuit of the conspiracy must be alleged and proven.  The mere presence at the scene of a crime is insufficient to show the existence of a conspiracy.  However, flight to avoid arrest following a crime is a relevant factor in considering the issue of whether a conspiracy existed.  Other factors which may be considered in determining the existence of a common understanding is the relationship between the parties, knowledge of and participation in the crime,  and the circumstances and conduct of the parties surrounding the criminal episode.

The Superior Court in addressing this issue, acknowledged that the shooting resulted from an unexpected chance encounter with the victim and that there was no evidence establishing that the brothers had a pre-existing agreement to shoot Williams with a deadly weapon.  See Doc. 29-1, p. 461.  It added that while the evidence  reflects an agreement to confront the victim and perhaps even cause him harm there is no "direct evidence" that George Rainey knew Petitioner had a gun or intended to use it on Williams.  Id.

The Superior Court held that based upon an application of the reasoning set

forth in <u>Commonwealth v. Marquez</u>, 980 A.2d 145, 154 (Pa. Super. 2009),[8] the

testimony that: (1) the brothers engaged in a joint pursuit of the victim's car; (2)

George blocked the victim's car in an alley; (3) George did not make any attempt

to prevent his brother from approaching the car; (4) George did not offer

assistance to the seriously injured victim; (5) George asked the Petitioner if he shot

the victim when Petitioner returned to the car; (6) both brothers assisted in the

disposal of the weapon when combined with the fact that the brothers jointly fled

to avoid arrest sufficiently satisfied the Commonwealth's burden of proof to

establish that there was an agreement between the brothers to cause bodily harm to

Williams through the use of a deadly weapon.[9] <u>Id</u>. at 462. The Superior Court

also acknowledged that this is a close case.

 The Superior Court concluded that the totality of the circumstantial

evidence presented by the Commonwealth sufficiently showed the existence of a

---

[8] <u>Marquez</u>, which addressed a similar fact pattern, held that even in the absence of direct evidence a criminal conspiracy conviction could be based upon evidence of flight along with other circumstantial evidence.

[9] Admittedly, the question posed by George Rainey could have been determined by the jury to infer that George had knowledge that Petitioner was going to shoot the victim.
Conversely, the jury could have simply determined that the question could have been simply asked because George saw and/or heard the Petitioner fire his weapon and was not sure if the victim had in fact been shot.

"conspiratorial agreement" between the brothers to inflict bodily injury on the victim with a deadly weapon. Id. at 465.

This Court agrees that due to the absence of direct evidence showing a conspiracy to use a firearm, this is a close case. As previously discussed, there was evidence presented at trial showing that Petitioner was a passenger in a car driven by his brother George which chased down the victim's car and blocked it in an alley. Eugene Rainey then exited the vehicle removed a handgun from his pocket and shot the victim. Upon returning to the car Petitioner's brother asked if he had shot the victim

As noted above, the Petitioner's conviction stemmed from a chance encounter with the victim. Likewise, there is no direct evidence showing that George Rainey knew that the Petitioner was armed prior to the time he removed a gun from his pocket. Nevertheless, this Court finds that the determination reached by the Superior Court that the circumstantial evidence concerning the brothers' conduct before, during, and after the shooting adequately established that they were acting in concert and that they had a common understanding about what was to happen and what they were trying to accomplish, was reasonable. Furthermore, the brothers clearly made a joint effort to avoid arrest by fleeing the state, evidence which also supports a charge of conspiracy.

The recitation of the evidence of the brothers' concerted conduct by the Superior Court is corroborated by this Court's independent review of the record. Based on an application of the standards announced in <u>Jackson</u>, there was clearly adequate evidence that supported the conspiracy conviction reached by the jury.

## Trial Court Error

Ground Three raises two claims of trial court error.  First,  Petitioner contends that the trial court erred by denying him a continuance of his retrial. Second, Rainey argues that it was trial court acted improperly by allowing the Commonwealth to present testimony by an additional witness.

## Continuance

Four days prior to retrial, the Commonwealth voiced its intention to call Brandon Davis as a witness.  Counsel for George Rainey filed a motion to exclude Davis' testimony[10] or in the alternative to continue the trial in order to allow the defense opportunity to properly investigate the new testimony.   The motion was denied.  Davis then testified that two days after the shooting he received a call from George Rainey asking him to get rid of the eyewitness Letika Engram.[11]  <u>See</u>

---

[10]  Co-counsel felt that he had a conflict of interest in that he had previously represented Davis in a criminal proceeding.  There is no indication that Petitioner's counsel had any such conflict of interest.

[11]    Davis did not act on the request.

Doc. 29-1, p. 754.  Petitioner asserts that if the continuance had been granted

rebuttal testimony by Michael Woodyard would have been presented by the

defense.

Petitioner's counsel did not join in the motion or file a separate request for a

continuance.  Since Petitioner did not seek a continuance, he cannot now raise a

claim before this Court that the trial court erred by denying a non-existent motion.

The Petitioner's related claim of ineffective assistance of counsel for failure to

seek a continuance will be addressed separately.

### Additional Witness

As a general rule, federal habeas corpus review is not available to adjudge

the correctness of a state court evidentiary ruling such as the admission of

testimony.   See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Keller v. Larkins,

251 F.3d 408, 416 n.2 (3d Cir. 2001); Lupkovich v. Cathel, Civil No. 04-5399,

2006 WL 3313975 at *4 (D. N.J., Nov. 14, 2006) ("Because the trial court's ruling

limiting the cross-examination of Chester Anderson regarding his reputation for

violence presents a question of state evidentiary law, it is not cognizable under §

2254.")

In short, evidentiary rulings are matters of state law, and are not within the

province of a federal habeas corpus court.  See King v. Kerestes, Civil No. 09-

1749, 2009 WL 5178805, at *3 (E.D. Pa., Dec. 21, 2009).  It is only where an evidentiary ruling "so infuse[s] the trial with unfairness as to deny due process of law," Lisenba v. People, 314 U.S. 219, 228 (1941), that federal habeas corpus review may exist.

Based upon an application of the above standards, the state court's evidentiary ruling to allow testimony by Brandon Davis that co-defendant George Rainey offered him $20,00.00 to "take care of" prosecution eyewitness Letika Engram is not a basis for federal habeas corpus relief.  Doc. 16, p. 21. Furthermore, Davis' testimony only directly implicated Petitioner's brother as having engaged in criminal conduct.  Thus, while Davis' testimony did also arguably support the conspiracy charge, the trial court's admission of the evidence was not so unfair to Petitioner Eugene Rainey as to constitute a denial of due process.   Habeas corpus relied will be denied with respect to Ground Three.

**Ineffective Assistance of Counsel**

Ground Four asserts that trial counsel provided ineffective assistance by failing to:  (1) seek a continuance when the Commonwealth announced that it would be calling a new witness; (2) join in co-counsel's objection to the Commonwealth's introduction of a new witness; (3) request a jury instruction on voluntary manslaughter; (4) prevent a retrial on the basis of double jeopardy after

Petitioner's first trial ended in a mistrial; (5) call Michael Woodyard as a witness; (6) retain a ballistics expert; (7) effectively cross examine witness Engram's inconsistent statements; (8) object to testimony by Davis that Petitioner offered money to a witness; (9) ask for an accomplice jury instruction regarding Joseph Mallory; and (10) object to the jury instruction given on criminal conspiracy.

In <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." <u>Id</u>. at 687; <u>accord</u> <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1493 (3d Cir. 1994). In <u>Deputy</u>, the United States Court of Appeals for the Third Circuit also noted that it was not bound by any state court determinations as to a counsel's performance. <u>Id</u>. at 1494.

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688; <u>Jermyn v. Horn</u>, 266 F.3d 257, 282 (3d Cir. 2001). A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689; <u>Jermyn</u>, 266 F.3d at 282; <u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d

Cir. 1996).  If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, <u>Strickland</u>, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." <u>United States v. Wiener</u>, 127 F. Supp. 2d  645, 648 (M.D. Pa. 2001).  A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel.  <u>See</u> <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987).  It follows that counsel cannot be deemed ineffective for pursuing a meritless claim.  <u>Hartey v. Vaughn</u>, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and show prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694; <u>Frey v. Fulcomer</u>, 974 F.2d 348, 358 (3d Cir. 1992)  "Without proof of both deficient performance and prejudice to the defense . . . it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand."  <u>Bell</u>, 535 U.S. at 695 (internal quotations and citation omitted).[12]

---

[12] A court may choose to address the prejudice prong first and reject an
(continued...)

At the time of Petitioner's state court proceedings, <u>Strickland</u>'s familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims.  In addressing Rainey's's present ineffective assistance claims, the state courts applied essentially the same two-prong test for ineffective assistance articulated in <u>Strickland</u>.

Specifically, under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the <u>Strickland</u> test.  <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Pierce</u>, 527 A.2d 973, 975-77 (Pa. 1987).  The Third Circuit has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to <u>Strickland</u>.  <u>Jacobs v. Horn</u>, 395 F.3d 92, 107 n.9 (3d Cir. 2005); <u>Werts v. Vaughn</u>, 228 F.3d 178, 204 (3d Cir. 2000).  Thus, it cannot be said that the state courts applied rules contrary to prevailing principles established by the Supreme Court for the adjudication of ineffective assistance claims.

Accordingly, under § 2254(d)(1), the relevant inquiry in addressing the pending ineffectiveness claims is whether the Pennsylvania state courts' decisions involved an unreasonable application of <u>Strickland</u> or were based on an

---

[12](...continued)
ineffective assistance claim solely on the basis that the defendant was not prejudiced. <u>See</u> <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d Cir. 2006).

unreasonable determination of the facts.  Jacobs, 395 F.3d at 107 n.9; Werts, 228 F.3d at 204.

I note that the pending assertions of ineffective assistance were raised during the course of Petitioner's PCRA proceedings.  Rainey's trial counsel and the prosecuting attorney testified during the resulting evidentiary hearings and the PCRA court concluded that their testimony was credible.

## Continuance

Prior to the commencement of the retrial, the Commonwealth indicated that it would be calling an additional witness, Brandon Davis.  Counsel for George Rainey filed a motion for a continuance on the basis of conflict of interest.[13] Petitioner's counsel did not join in the motion or file a separate request for a continuance.  Co-Counsel's motion for a continuance was denied.

Petitioner asserts that his trial counsel's failure to seek a continuance constituted ineffective assistance.  Trial counsel gave PCRA testimony that unlike co-counsel he had no conflict of interest with Davis.  Furthermore, he already had an opportunity to speak with Mr. Davis prior to trial and made a decision that since there were issues with Davis' testimony it would be better to immediately proceed to trial rather than affording the Commonwealth additional time to engage

---

[13]   Co-counsel had previously represented Davis in a criminal proceeding.

in trial preparation.  In addition, trial counsel testified that Petitioner was advised and agreed with that strategy.

Since Petitioner's attorney had no conflict of interest with respect to Davis, he cannot be deemed to have been ineffective for failure to join in co-counsel's motion.  Second, trial counsel's admitted decision not to seek a continuance could reasonably be considered sound trial strategy where he had already interviewed Davis during trial preparation and there has been no demonstration by Petitioner that there was a  reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.[14] Based upon those considerations, this request for habeas corpus relief will be denied.

## Jury Instructions

Petitioner next contends that counsel should have requested that the  jury be provided with an instruction on voluntary manslaughter.

Federal habeas corpus relief may issue only if the court finds that an error in the jury charge "had substantial and injurious effect or influence in determining

---

[14]    As previously discussed, where there is a reasonable basis for a tactical decision made by defense counsel, a finding of ineffective assistance cannot be reached.  Burger, 483 U.S. at 794.  "[S]ubstantial deference is to be accorded to counsel's tactical decisions."  Wiener, 127 F. Supp. 2d. at 648.

the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993).[15]   In <u>Burger v. Kemp</u>, 483 U.S. 776, 782 n.5 (1987), the Court ruled that jury instructions that may have erroneously shifted the burden of proof on criminal intent to commit murder did not warrant habeas corpus relief where "'the evidence was so dispositive of intent' that it can be said beyond a reasonable doubt that 'the jury would have found it unnecessary to rely on the presumption.'"

Propriety of jury instructions is to be determined by assessing the entire set of instructions.  <u>See</u>  <u>Victor v. Nebraska</u>, 511 U.S. 1, 5 (1994); <u>United States v. Issac</u>, 134 F.3d 199, 203 (3d Cir. 1998). The primary point of inquiry is "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury, and [we] reverse only if the instruction was capable of confusing and thereby misleading the jury." <u>Bennis v. Gable</u>, 823 F.2d 723, 727 (3d Cir. 1987) (internal quotations omitted); <u>United States v. Zehrbach</u>, 47 F.3d 1252, 1264, (3d Cir. 1995).

Counsel may be deemed ineffective for failure to object to jury

---

[15]There is a "constitutional imperative that the state prove beyond a reasonable doubt all the elements of the crime charged." <u>Rock v. Zimmerman</u>, 959 F.2d 1237, 1245-46 (3d Cir. 1991)(citing <u>In Re Winship</u>, 397 U.S. 358 (1970)).  A jury instruction that relieves the state of its obligation of proving facts constituting every element of the offense beyond a reasonable doubt violates a defendant's federal due process rights. <u>Carella v. California</u>, 491 U.S. 263, 265 (1989)(per curiam), <u>Smith v. Horn</u>, 120 F.3d 400, 415 (3d Cir. 1997).

instructions. <u>Priester v. Vaughn</u>, 382 F.3d 394, 401-02 (3d Cir. 2004).  However, "reviewing courts must be deferential in their scrutiny and scrupulously avoid the distortions of hindsight by viewing performance from counsel's perceptive at the time." <u>Everett v. Beard</u>,  290 F.3d 500, 509  (3d Cir.  2002).  As previously noted, there is a  strong presumption that counsel's conduct was reasonable.  <u>Strickland,</u> 466 U.S. at 690.

Based upon trial counsel's PCRA testimony, it was Petitioner's trial strategy that someone else (the third passenger, Mallory)  was the shooter.  Therefore, since requesting a voluntary manslaughter instruction would have required a concession that Petitioner was the shooter and undermined the defense strategy, no such instruction was requested.   The undisputed failure to seek a voluntary manslaughter jury instruction was a reasonable tactical decision by Petitioner's trial counsel given that he was arguing that another individual was the shooter.

Moreover,  given that trial strategy, the failure to seek such an instruction did not undermine the truth determining process to the extent that a reasonable adjudication of guilt or innocence did not occur.  Based upon those circumstances, Petitioner's trial counsel cannot be deemed to have been deficient for failure to request such an instruction.  Accordingly, there is no basis for federal habeas corpus relief.

Petitioner also asserts that trial counsel erred by not requesting the Court to provide an accomplice liability instruction for Mallory.  As discussed above, Petitioner pursued a defense based on a theory that another occupant in his vehicle, Joseph Mallory, was the one who shot the victim.

Trial counsel testified during PCRA proceedings that he did not request such an instruction because it would have allowed the jury to conclude that Petitioner acted as an accomplice to Mallory in the murder.  For the same reasons previously discussed, this was a reasonable trial strategy and as such is not a basis for federal habeas corpus relief.

Petitioner further maintains that trial counsel should have objected to the criminal conspiracy instruction given by the trial court.  Trial counsel gave PCRA testimony that he did not feel that the challenged portion of the conspiracy instruction was so prejudicial as to warrant an objection.  Counsel added that he also did not wish to highlight that portion of the instruction to the jury by raising an objection.

Based upon a review of the challenged instruction, there was an arguably reasonable basis for the decision of trial counsel not to raise an objection. Moreover, it has not been established that the challenged portion of the instruction was so substantial that it confused or mislead the jury.  Based upon those

considerations, a finding of ineffective assistance is not warranted.

**Double Jeopardy**

Petitioner next contends that his trial counsel's performance was deficient because of failure to file a motion to dismiss or preclude the retrial on the basis that such prosecution would violate the prohibition against double jeopardy. Rainey asserts that the Commonwealth provoked the defense into requesting a mistrial.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." The Clause serves the function of preventing both "successive punishments and successive prosecutions." United States v. Ursery, 518 U.S. 267, 273 (1996). It "prohibits the government from punishing twice or attempting a second time to punish criminally for the same offense." Id., see also United States v. Rice, 109 F.3d 151, 153 (3d Cir. 1997). The Double Jeopardy Clause is applicable to the States through the Fourteenth Amendment. See Benton v. Maryland, 395 U.S. 784 (1969).

The purpose of the Double Jeopardy Clause is to prevent a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction or multiple prosecutions for the same offense. United

States v. $ 184,505.01 in U.S. Currency, 72 F.3d 1160, 1165 (3d Cir. 1995).

According to the record before this Court,  Petitioner's first trial ended in a mistrial due to the introduction of evidence pertaining to repair work performed on previous damage to a window of the vehicle he was riding in at the time of the underlying incident.  This evidence was described by the Pennsylvania state courts as being unknown to both the Commonwealth and the defense.[16]  This new evidence apparently contradicted remarks made by Petitioner's counsel during opening arguments that the damage had occurred during the confrontation which led to Petitioner's criminal charges.

This is not a case where an initial prosecution ended in an acquittal.  As such, the entry of a mistrial did not preclude a retrial under the Double Jeopardy Clause.  Furthermore, the PCRA court indicated that any  motion seeking to prevent retrial under the Double Jeopardy Clause would have been denied because there was no showing that the evidence at issue was not previously disclosed due to any deliberate misconduct by the Commonwealth.  Pursuant to the above discussion, trial counsel's performance cannot be deemed deficient for failing to pursue a  motion to dismiss which had no chance of succeeding.

---

[16]    Prior damage to the car window had been repaired prior to the shooting. This evidence was contradictory to a suggestion made by trial counsel during his opening remarks.

## Ballistics Expert

Petitioner next maintains that trial counsel erred by not retaining a ballistics expert who could offer testimony regarding the trajectory of the shots fired.  In a related claim, Rainey indicates that  Commonwealth witness, Sergeant Bankert, was not adequately cross-examined regarding his investigation of the crime scene. As previously discussed, Petitioner's defense was premised upon a theory that he was not the shooter.

Respondent asserts that there is no basis for relief since Bankert was not deemed to be a ballistics expert and his testimony  did not identify or implicate Petitioner as being the shooter.   Trial counsel gave PCRA testimony that he and Petitioner discussed that in light of their trial strategy the retention of a ballistics expert would not be necessary.   This Court has already determined that the "other shooter defense" pursued by trial counsel was a reasonably sound tactical decision. More importantly, there is no showing by Rainey that a ballistics expert could have established that he was not the shooter.  Accordingly, there is again no basis for a finding of ineffective assistance.

 Petitioner's supporting memorandum also argues for the first time that trial counsel was deficient for not properly cross examining the Commonwealth's ballistics expert Sergeant Bankert.  He acknowledges that this claim "was

defaulted" in state court.  Doc. 16, p. 27, n. 12.   Since this argument was not

previously raised before the Pennsylvania state courts and Petitioner has no

remaining available state court remedies, it is procedurally defaulted and is subject

to dismissal on that basis since Petitioner has not shown that his procedural default

should be excused.[17]

## Witness Woodyard

Petitioner next argues that trial counsel acted improperly by not calling

Michael Woodyard as a witness for the purpose of rebutting the testimony offered

by Brandon Davis.

Trial counsel gave PCRA testimony that he was unable to locate Woodyard

for trial.   In light of the state courts' factual determination that Rainey's  trial

---

[17]  Petitioner's third PCRA action was dismissed as untimely.  "A state prisoner
is generally barred from obtaining federal habeas relief unless the prisoner has
properly presented his or her claims through one 'complete round of the State's
established appellate review process.'"  Woodford v. Ngo, 548  U.S. 81, 92 (2006).
When a claim has not been fairly presented to the state courts but further
state-court review is clearly foreclosed under state law, exhaustion is excused on the
ground of futility.  See Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Toulson v.
Beyer, 987 F.2d 984, 987-88 (3d Cir. 1993).  Such a claim is procedurally defaulted,
not unexhausted.  A federal habeas court cannot review a procedurally defaulted
claim, "if the decision of [the state] court rests on a state law ground that is
independent of the federal question and adequate to support the judgment."  Beard v.
Kindle, 558 U.S. 53, 55 (2009).  Procedural default can only be excused if a petitioner
can show "cause" and "prejudice" or that a "fundamental miscarriage of justice"
would result.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

counsel made a reasonable effort to secure Woodyard's presence as a witness, a viable claim of ineffective assistance has not been stated.  This determination is bolstered by the  fact that trial counsel conducted a  cross examination of Brandon Davis and the failure of Rainey to demonstrate any resulting prejudice as required under <u>Strickland</u>.[18]

## Witness Engram

It is next argued that trial counsel failed to effectively cross examine witness Engram regarding her prior inconsistent statements.  <u>See</u> Doc. 16, p. 31. As previously discussed, Engram was driving the vehicle occupied by the victim at the time of the shooting.  Respondent counters that Petitioner's counsel cross examined Engram by attempting to impeach her trial testimony through her preliminary hearing testimony and a written statement she provided to police. The Respondent concludes that since Engram's prior inconsistent statements were brought to the jury's attention there is no basis for habeas corpus relief.

Based upon a review of the trial transcript, during cross-examination of Engram trial counsel for both defendants pointed out her inconsistent preliminary

---

[18]  It is also noted that Woodyard testified at the subsequent retrial of George Rainey.  Despite Woodyard's testimony Petitioner's co-defendant was still convicted of criminal conspiracy to commit aggravated assault and third degree murder thus, undermining any claim of resulting prejudice.

hearing testimony, a inconsistent statement to the police,  established that Engram

was on probation.  <u>See</u>  Doc. 29-1, pp. 250- 261.  Counsel also attacked Engram's

version of the events by contrasted her  testimony with testimony given by police

officers.

The record clearly shows that Engram was cross examined regarding prior

inconsistent statements and testimony and Rainey has not demonstrated any

resulting prejudice as required under <u>Strickland</u>.  Petitioner has also failed to show

that the state court adjudication of this issue was contrary to or an unreasonable

application of precedent established by the United States Supreme Court.  The

request for habeas corpus relief will be denied.

**<u>Witness Davis</u>**

Petitioner next asserts that trial counsel failed to object to the prosecution's

prejudicial and incorrect statements that he offered money to a witness when the

testimony at trial only indicated that Petitioner's co-defendant had done so.

Since a review of the transcript provides that the Commonwealth only stated

that the co-defendant made an attempt to bribe a witness, there is no basis for

relief.


**<u>Newly Discovered Evidence</u>**

Ground Five claims that newly discovered evidence establishing prosecutorial misconduct and witness recantation, as well as exculpatory evidence, warrant the granting of habeas corpus relief.

The after discovered evidence is described as recantation testimony by Commonwealth witness Ebony Evans, who maintains that her trial testimony was coerced because she was threatened with the loss of custody of her children by the Commonwealth.   Petitioner adds that other new testimony, affidavits by two purported eyewitnesses, Jasmine Long and Travis Copeland, would also support his claim of innocence.

Ms. Evans' recantation testimony was presented at a PCRA hearing and was determined to lack credibility in light of testimony given by the victim's mother and Engram.  Specifically, the victim's mother testified during that same proceeding as to conversation that she had with Evans prior to Evans being interviewed by the Commonwealth.  The substance of that conversation was consistent with Evans' trial testimony thus undermining the coercion contention. Engram also gave testimony that was consistent with Evans' trial testimony. Moreover, the prosecuting attorney gave PCRA testimony that he never threatened to take Evans' children away from here.

It is initially noted that since the Superior Court refused to address the

merits of these arguments on the grounds that they were time barred, these arguments have apparently been procedurally defaulted and are subject to dismissal on that basis.

Second, based upon a thorough review of the record there is no basis for a finding that the PCRA court made an unreasonable determination of the facts when considering the merits of the newly discovered evidence or applied a standard which was contrary to clearly established federal law. There is no basis for this Court to reverse the credibility determination reached by the PCRA court with respect to the Petitioner's new evidence.

## Conclusion

Based upon this Court's review of the record, Petitioner has failed to satisfy his burden under <u>Bell</u> of providing proof that the alleged failures of defense counsel and the trial court rendered the result of his trial to be unreliable. His pending claims simply do not support a determination that the fairness of the trial was affected to the degree necessary to constitute a constitutional violation. In conclusion, despite having been afforded a liberal review by this Court, Rainey has not satisfied his burden of establishing any entitlement to federal habeas corpus. An appropriate Order will enter.

BY THE COURT:


  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge